

United States Bankruptcy Court
Eastern District of Pennsylvania

| | |
|---|---|
| In re: | Case No. 25-13992-djb |
| Christopher Martinez, | Chapter 7 |
| Debtor. | |

**Debtor's Verified Motion to Convert Case to Chapter 13**

**AND NOW**, Debtor Christopher Martinez, through his attorney, moves this Court under 11 U.S.C. § 706(a), Local Bankr. R. 1017-1, and Local Bankr. R. 9014-2 for entry of an order converting this case from chapter 7 to chapter 13. In support of this motion, the Debtor states as follows:

**I.    Introduction**

1. The chapter 7 trustee has initiated litigation to sell real property owned by the Debtor based on her erroneous belief that there is non-exempt equity to administer for the benefit of the bankruptcy estate's creditors.

2. The Debtor disputes that any meaningful non-exempt equity exists in the property and believes that liquidation would yield only a minor distribution to unsecured creditors.

3. The Debtor has recently experienced a significant increase in income and seeks to convert this case to chapter 13 so that he can protect his property.

**A.    Jurisdiction**

4. The Court has jurisdiction under 28 U.S.C. § 1334 and the Standing Order of Reference (E.D. Pa. Nov. 8, 1990).

5. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

6. The Debtor consents to the entry of a final order by this Court.

7. Venue is proper under 28 U.S.C. § 1408.

## II. Background

### A. The Bankruptcy Case

8. The Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on October 1, 2025.

9. Lynn E. Feldman was appointed as the chapter 7 Trustee and continues to serve in that capacity.

10. When this case was filed, the Debtor was underemployed as a freelance construction worker. He scheduled monthly income of $2,400 on his original Schedule I.

11. In late October 2025, the Debtor became gainfully employed as a material handler. His amended Schedule I reflects monthly income of $4,869.

12. The Debtor scheduled unsecured claims on Schedule E/F as follows:

| Scheduled Creditor | Scheduled Amount |
|---|---|
| Capital One | $13,235 |
| Citibank | $776 |
| Credit One American Express | $1,415 |
| Credit One Bank N.A. | $1,730 |
| Synchrony Bank | $1,402 |
| TD Bank/Raymour & Flanigan | $5,598 |
| Wells Fargo Bank NA | $1,725 |
| **Total** | **$25,881** |

**B.   The Real Property**

13. The Debtor owns an interest in real property commonly known as 24 S Rowand Ave, in the Borough of Runnemede, County of Camden, and State of New Jersey (the "Property").

14. The Debtor acquired the Property together with Vanessa Martinez by a deed made on March 23, 2020, under which they took title as tenants in common, each holding an undivided fifty percent share.

15. A true and correct copy of the deed is attached as Exhibit A.

16. The Debtor does not reside at the Property; Vanessa resides there with their children and uses it as the family home.

17. The only lien encumbering the Property is a mortgage executed by the Debtor and Vanessa in favor of New American Funding and recorded with the Camden County Clerk (the "Mortgage"), which secures repayment of a loan with respect to the Property.

18. A true and correct copy of the Mortgage is attached as Exhibit B.

19. The outstanding balance owed to New American is about $135,410.

20. A true and correct copy of a recent Mortgage statement is attached as Exhibit C.

21. In anticipation of this case, the Debtor commissioned a comparative market analysis by real estate professional Jechelle Cosme (the "Cosme CMA"), which states that the average property comparable to the Property sells for $197,857.

22. A true and correct copy of the Cosme CMA is attached as Exhibit D.

23. The Debtor scheduled the Property on Schedule A/B with a total value of $178,071, consistent with the Cosme CMA and a hypothetical ten percent cost of sale.

24. Upon information and belief, the estimated value on the Property's Zillow listing caused the Trustee to consider whether the Property was worth more than the scheduled value.

25. Zillow estimates the Property's value as $264,500.

26. A true and correct copy of the Property's Zillow listing as of December 10, 2025, is attached as Exhibit E.

**C. The Trustee's Intent to Sell the Property**

27. Upon information and belief, the Trustee consulted a real estate broker who estimated that the Property's value is about $300,000.

28. On December 2, 2025, the Trustee filed a complaint against Vanessa requesting Court approval to sell the Property on the stated basis that it has significant non-exempt equity that can be liquidated for the benefit of the bankruptcy estate.

29. Upon information and belief, the Trustee did not obtain a formal appraisal or conduct any objective valuation analysis, and her decision to market the Property is based only on the subjective estimate of a broker who stands to earn a commission from its sale.

**III. Legal Standard**

30. Section 706 of the Bankruptcy Code provides that a debtor "may convert a case under [chapter 7] to a case under chapter 11, 12, or 13 of this title at any time," so long as the case has not previously been converted and the debtor is eligible to be a debtor under the destination chapter.

31. A debtor's right to convert may only be denied in cases of bad faith or where conversion would be pointless because the debtor cannot propose a feasible chapter 13 plan. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 379 (2007).

IV.     **Argument**

   A.    **The Debtor is eligible for conversion under <u>Marrama</u>.**

   32.    The Debtor is eligible to be a debtor under chapter 13 as he is an individual with regular income, his debts are within the limits of 11 U.S.C. § 109(e), and this case has not previously been converted from another chapter.

   33.    The Debtor is acting in good faith. He originally filed under chapter 7 when he was underemployed, but now, with his increased income, he seeks to convert to chapter 13 to repay what he can, preserve the family home, and avoid a disruptive sale that would yield little benefit to unsecured creditors.

   34.    The Debtor can propose a feasible chapter 13 plan, as his amended Schedule I reflects monthly income sufficient to fund plan payments.

   B.    **The Trustee's decision to sell the Property lacks merit.**

   35.    Further administration of this case under chapter 7 is improper.

   36.    Unsecured creditors could be paid in full if the Property sells for $300,000, but that figure is nothing but a dream due to the Trustee's failure to obtain an objective analysis of the Property's value.

   37.    In reality, selling the Property would enrich the Trustee and her chosen professionals in full while paying unsecured creditors a fraction of their claims.

   38.    The Trustee followed the sloppy "have the house hit the market . . . and see if there's equity or not" approach for which Judge Patricia M. Mayer of this Court recently admonished a different chapter 7 trustee. <u>In re Swartz</u>, 670 B.R. 750, 763 (Bankr. E.D. Pa. 2025).

39. Based on the Zillow value, the Property's equity can be summarized as follows:

| | |
|---|---:|
| Total value of property | $264,500 |
| Cost of sale | ($26,450) |
| Payment of mortgage lien | ($135,410) |
| Distribution to co-owner | ($51,320) |
| Debtor's exemption | ($17,462) |
| Chapter 7 trustee commission | ($12,375) |
| Chapter 7 administrative expenses | ($12,000) |
| **Funds available for scheduled unsecured creditors** | **$9,483** |

40. The Debtor does not assert the Zillow value as definitive evidence of the Property's actual value. Rather, it is a data point in the range of information that was available to the Trustee, which is relevant to show the unreasonableness of her decisions.

41. Given that the Zillow value sits between the scheduled value and the estimate of the Trustee's broker, it was unreasonable for the Trustee to rely on the broker's estimate without further due diligence as to the Property's actual value.

42. The "effect of a proposed distribution" is a relevant factor in considering whether a trustee's sale of property is appropriate. In re Culp, 550 B.R. 683, 697 (D. Del. 2015).

*[This space intentionally left blank.]*

43. Here, the effect of a proposed distribution would be paltry; unsecured creditors would be paid just thirty-seven cents for every one dollar of their claims.

| Scheduled Creditor | Estimated Distribution |
|---|---|
| Capital One | $4,850 |
| Citibank | $284 |
| Credit One American Express | $518 |
| Credit One Bank N.A. | $634 |
| Synchrony Bank | $514 |
| TD Bank/Raymour & Flanigan | $2,051 |
| Wells Fargo Bank NA | $632 |
| **Total** | **$9,483** |

44. Because the Trustee initiated litigation without due diligence as to the Property's value, all administrative expenses incurred by the estate in pursuit of the Property's sale are unreasonable.

### C. To avoid ambiguity, the conversion order must state that the Debtor's chapter 13 plan may last for up to five years from the conversion date.

45. The Bankruptcy Code does not make clear that a converted debtor's chapter 13 plan may last for up to five years after the date of conversion, rather than five years from the date the case was originally filed.

46. The plain language of the Bankruptcy Code as enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act requires a debtor converting to chapter 13 to make their first plan payment thirty days after their case was filed, even if it was still a chapter 7 at the time. 11 U.S.C. § 1326(a) ("Unless the court orders otherwise, [a debtor must begin making plan payments to the trustee] not later than 30 days after the date of the filing of the plan or the order

for relief, whichever is earlier . . ."). This is because Section 1326(a) is not included in the list of affected provisions in 11 U.S.C. § 348(b), which provides that the date of a conversion order must be treated as the date of the order for relief.

47.    The Court must enforce a plainly written statute according to its terms, unless the result is absurd. Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). An interpretation is absurd when it is irrational, nonsensical, or produces a result that Congress could not have intended. United States v. Fontaine, 697 F.3d 221, 228 (3d Cir. 2012). Section 1326(a)'s result here is impossible, which makes it irrational and nonsensical on its face. It tracks with BAPCPA's well-known drafting errors, which include "spelling errors, erroneous statutory cross-references, incorrect grammar and terminology references, and mistakes in punctuation." Cong. Rec. H7158 (daily ed. Sept. 28, 2010) (Statement of Rep. Scott).

48.    To prevent confusion, the conversion order must state that plan payments may last for up to five years from the date of conversion. The Court has authority to grant this relief under Section 1326(a)(1), which qualifies its requirements by stating, "unless the court orders otherwise."

## V.    Request for Relief

For the reasons above, the Debtor asks the Court to grant relief in the form of order attached, and further in his favor if necessary and proper under the law.

*[This space intentionally left blank.]*

Date: December 10, 2025          **SADEK LAW OFFICES LLC**
*Attorney for Debtor*

By: /s/ Michael I. Assad
    Michael I. Assad (#330937)
    1500 JFK Blvd., Suite 220
    Philadelphia, PA 19102
    215-545-0008
    michael@sadeklaw.com

**Verification**

    I, Christopher Martinez, am the debtor in this bankruptcy case. I have read this motion and verify that all factual allegations therein are true and correct to the best of my knowledge, information, and belief. I verify under penalty of perjury that the foregoing is true and correct.

Date: December 10, 2025          /s/ Christopher Martinez
                                                    Christopher Martinez